**Counties ⊂⊐113(5)—Commissioners' court authorized to employ attorneys and to pay them for services out of county funds.**

The commissioners' court of a county had authority to employ attorneys to assist the county attorney in the prosecution of suits on claims of the county, and to pay the attorneys for such services out of the county funds.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by Peter G. Adams and others against R. E. Seagler and others. Judgment for plaintiffs was affirmed in part and reversed in part by the Court of Civil Appeals (238 S. W. 707), and plaintiffs bring error. Affirmed.

Swift & Cotten, Campbell & Sewell, and Campbell, Greenwood & Barton, all of Palestine, for plaintiffs in error.

Seagler & Pickett, of Palestine, for defendants in error.

PIERSON, J. The commissioners' court of Anderson county, by six written contracts, employed defendants in error Seagler & Pickett, a law firm, to represent the county in certain claims against a number of officials and ex-officials of the county and others, and to bring and prosecute suits thereon. This suit was filed by plaintiffs in error against said firm of Seagler & Pickett, Charles R. Stewart, county judge of Anderson county, John F. Nash, J. P. Hanks, S. W. Wolf, and W. C. Tippen, constituting the commissioners' court of Anderson county, and A. S. Tyler, county treasurer, to declare said contracts void, and to enjoin the payment of compensation provided therein to said attorneys out of county funds, upon the grounds that the commissioners' court was without authority to make the contracts, because, under Revised Statutes, art. 366, it was the duty of the county or district attorney to bring and prosecute such suits for the compensation and fees fixed by law.

It is made to appear in the statement of the case by the Court of Civil Appeals, and otherwise in the record, that the commissioners' court employed said attorneys *to assist* the county attorney in bringing and prosecuting the suits, and that the county attorney joined in the suits filed. We think there can be no doubt that the commissioners' court, under its authority to control and manage the finances and business affairs of the county, has power and authority to employ attorneys to assist the regularly constituted officers of the county in the prosecution of its claims and suits. Terrell v. Greene, 88 Tex. 539, 31 S. W. 631. It would

necessarily follow that it would be authorized to pay for such services out of the county funds. We quote with approval the following from the opinion of the Court of Civil Appeals:

"We agree with appellants that none of the contracts were shown to be beyond the power of the commissioners' court, and that that body, as the executive head of the business affairs of the county, did not lack the authority to in good faith employ attorneys to assist the county or district attorney in filing and prosecuting suits on behalf of the county and to pay for such services out of county funds, when in the exercise of its discretion the employment was deemed necessary to protect the county's interests."

For further discussion, see the opinion of the Court of Civil Appeals in 238 S. W. 707.

It is unnecessary to discuss the other issues raised by plaintiffs in error and defendants in error relating to other and further powers that may be or may not be exercised by the commissioners' court, as, under the facts, the issue above decided controls and disposes of this case.

The judgment of the Court of Civil Appeals is affirmed.

GREENWOOD, J., took no part in the decision of this case.

---

## McCLELLAN et al. v. HALEY et al. (No. 411–3768.)

(Commission of Appeals of Texas, Section A. April 18, 1923.)

**1. Mines and minerals ⊂⊐112(2)—Compensation for lost time allowable as for "labor" within lien statute.**

Under a contract for drilling an oil well whereby the drillers were to receive compensation for drilling, shut-down time, and underreaming, compensation for lost time caused by defendants' failure to provide material and supplies for continuous labor is allowable; such lost time being "labor" within the laborer's lien statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Labor.]

**2. Appeal and error ⊂⊐1040(3)—Judgment will be sustained, regardless of error in sustaining exceptions to petition, if it appears no other judgment could have been legally rendered.**

Claimants under the laborer's lien statute to secure payment of their account for labor for drilling, lost time, and underreaming an oil well must show a strict compliance with the statute, and, on error, if they have fundamentally failed to show their right to recover, the Supreme Court will sustain a judgment against them, if it clearly appears from their pleadings that no other judgment could have been legally rendered, though exceptions to petition were erroneously sustained.

---

⊂⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied May 30, 1923.

**3. Mines and minerals ⬤➝117—Account under laborer's· lien statute held ·insufficient where not itemized.**

In an action to recover for labor performed in drilling an oil well for shut-down time, and for underreaming under laborer's lien statute, a statement of account which failed to set out the days upon which the work was alleged to have been done *held* insufficient under Vernon's Sayles' Ann. Civ. St. 1914, art. 5622, requiring that such account shall be itemized.

**4. Mines and minerals ⬤➝114—Failure to file notice under laborer's lien statute 10 days prior to filing claim held to bar recovery.**

No recovery can be had where written notice in a suit under laborer's lien statute for work performed in drilling an oil well for shut-down time and for underreaming was not served on the owner of the property 10 days prior to filing of the claim as required by Vernon's Ann. Civ. St. Supp. 1918, arts. 5639a, 5639b, 5639d, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5632.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by J. C. McClellan and others against one Thomas and others, wherein E. F. Haley intervenes. A judgment sustaining intervener's exceptions and giving plaintiffs personal judgment, but denying their claim for a mechanic's lien was affirmed on plaintiffs' appeal by the Court of Civil Appeals (237 S. W. 627), and plaintiffs bring error. Affirmed as recommended by the Commission of Appeals.

Frank Hartgraves, of Menard, for plaintiffs in error.

T. A. Scruggs, of Menard, and J. C. Terrell, of Fort Worth, for defendants in error.

RANDOLPH, J. This suit was filed in the district court of Menard county by J. C. McClellan and others, who will hereinafter be styled plaintiffs, against Thomas, Ludlow, and Devenish, hereinafter styled defendants, to recover for labor performed, for "shut-down time," and for underreaming, in the matter of a contract for the drilling of an oil well. The contract is alleged to have been verbal, and plaintiffs allege they were employed to drill said well by the defendants, who were the original contractors, and were to receive compensation for such drilling, shut-down time, and underreaming, as alleged in their account and affidavit which they filed and had recorded for the purpose of fixing a laborer's lien upon certain property alleged therein to belong to the defendants. The defendants do not appear to have contested the suit, but E. F. Haley, as alleged owner of the property, filed in turn his petition of intervention, claiming to own the property upon which plaintiffs were asserting their lien. The trial court rendered a personal judgment in favor of plaintiffs as against the defendant, but, after the evidence

was submitted, sustained the intervener's exceptions to plaintiffs' petition, and held that there was no lien established in plaintiffs' favor on the property and refused to foreclose same. From the judgment sustaining said exceptions only, the plaintiffs appealed, and the Court of Civil Appeals affirmed the trial court's judgment.

[1] Plaintiffs' claim for compensation for shut-down time is contested by intervener for the reason that the statute only provides for a lien for labor performed, and not for lost time. We think it only necessary to say in reply to this contention that the plaintiffs had the right to contract against lost time as well as for labor actually performed. Having so contracted, we can see no reason for not allowing compensation for lost time caused by the failure of the defendants to provide material and supplies for continuous labor, and that such lost time is labor and comes within the terms of the statute.

Intervener also contended in the trial court, and here contends, that the underreaming was performed by the plaintiffs under an agreement that the compensation for such work should be payable on demand, and that the alleged indebtedness accrued more than 30 days prior to the filing of said lien.

The plaintiffs' petition, as well as their affidavit attached to their lien account, alleges that said item was payable on demand, and it is not anywhere shown in such pleadings or affidavit that any demand was made until the filing of this suit. The intervener did not by special exception raise the question as to the failure of the plaintiff's petition to allege that demand was made, or when it was made.

[2] Plaintiffs' suit being based upon a claim of lien to secure the payment of their account for labor, and this appeal being an attack on a judgment rendered against them, they must show a strict compliance with the statutes, and it is our duty to sustain the judgment rendered, notwithstanding the error of the trial court in sustaining intervener's exceptions, if plaintiffs have fundamentally failed to show their right to recover in their pleading filed in this cause, because it is the duty of this court to sustain such judgment if it clearly appears from the pleading of the plaintiffs that no other judgment could have been legally rendered than was rendered. Henderson v. Lindley, 75 Tex. 185, 12 S. W. 979; Albright v. Corley, 40 Tex. 110; Newton v. Emerson Talcott Co., 66 Tex. 147, 18 S. W. 348; Roller v. Reid (Tex. Sup.) 25 S. W. 624.

Were the plaintiffs entitled to assert their lien against the intervener? And did they show themselves to be so entitled by their pleadings? We will answer these questions in the discussion of the case stated in plaintiffs' petition.

Plaintiffs state their account and affidavit in their petition as follows:

Menard, Texas, Aug. 12, 1920.

M. Thomas and Ludlow and Devenish, Well No. 1, Ball in Account with McClellan & Shaffer, Oil Well Drilling Contractors.

| | |
|---|---:|
| Balance on Oct. account..................... $ | 896 00 |
| November, 1919, shut down 12 days........ | 960 00 |
| December, 1919, shut down 27 days......... | 2,160 00 |
| January, 1920, shut down 17 days........... | 1,360 00 |
| February, 1920, shut down 24 days......... | 1,920 00 |
| March, 1920, shut down 27 days............. | 2,160 00 |
| April, 1920, underreaming 11 days......... | 1,100 00 |
| May, 1920, underreaming 17 days, shut down 7 days............................... | 2,260 00 |
| June, 1920, underreaming 15 days.......... | 1,500 00 |
| July, 1920, shut down 9 days................ | 720 00 |
| August, 1920, shut down 2 days............. | |
| Cleaning coil 7 days..................... | 860 00 |
| | $15,896 00 |
| Received on this acct. July 3............... | 1,000 00 |
| Balance now due........................ | $14,896 00 |

[3] It is clear that statement of this account does not comply with the statutory requirement that such account shall be itemized. Article 5622, Vernon's Sayles' Civil Statutes. The first item, "Balance on October account," is a lump sum that gives no data to determine the days upon which the work was alleged to have been done. The items for "shut-down" time and for underreaming do not identify the particular days upon which the labor was performed, and the item "Cleaning coil" gives no date upon which it was done.

In the case of Ferguson v. Ashbell and Simpson, 53 Tex. 249, the court, passing upon the sufficiency of a bill of particulars or statement of account filed under a verbal contract for the purpose of securing a materialman's lien, says:

"In verbal contracts, however, the terms and specifications of the contract and the amount and value of the work and materials furnished, are made ex parte, and should be so specific and certain as to advise the owner of the property, other lien creditors, if any, and all persons interested, of the particulars of the demand sought to be enforced, so that, if they desire, they may be prepared to contest the same. Phillips on Mech. Liens, § 350; Noll v. Swineford, 6 Pa. St. 191; Lanman's Appeal, 8 Pa. St. 476; Carson v. White, 6 Gill (Md.) 27.

"In commenting upon the certainty required in such statement under the statute of Pennsylvania, the Supreme Court of that state say: 'It has been felt that the extraordinary remedy afforded by our laws to mechanics and materialmen requires to be properly guarded, to prevent it from becoming a source of unjust annoyance and injury to those whose property is liable to be made the subject of its action. * * * As the law calls for nothing unreasonable at the hand of him who would fasten an incumbrance upon the property of his neighbor, no just ground of complaint is afforded by insisting upon a rigid adherence to its provisions. The information it exacts is, or ought to be, entirely within the power of the creditor to give, and an omission to put it on the record is therefore without excuse. Rehrer v. Zeigler, 3 Watts & Serg. 258; Thomas v. James, 7 Watts & Serg. 381; Witman v. Walker, 9 Watts & Serg. 186. Indeed, the great object of the statute in pointing out the characteristics of the statement to be filed would, in the end, be utterly defeated, were we to indulge the laxity of practice which ignorance and carelessness conspire to introduce and perpetuate.' Noll v. Swineford, 6 Pa. St. 191.

"Our statute does not prescribe the requisites of the bill of particulars, and, although no precise rule can be laid down which would apply to every case, it may be safe to say that it should be reasonably certain as to the character and amount of materials furnished and the work performed, the dates and place when thus furnished and performed, and the value of the same."

Under our lien statutes below quoted, it is prescribed that the account shall be itemized. The plaintiffs must furnish such particulars as will provide the owner of the property they are asserting a lien upon with such data as will enable him to ascertain the correctness of the account, should he desire to contest it.

[4] There is another defect in plaintiffs' case as pleaded, and as set forth in their supporting affidavit to their account. This suit being based upon account for service for work done under a verbal contract, the statutes require written notice to be served on the owner of the property of the claim 10 days prior to the filing of said claim, and it nowhere appears in the affidavit or in the plaintiffs' petition that written notice was ever given the defendants at any time. That the statutory requirement will clearly appear, we cite and copy the controlling statutes.

Vernon's Ann. Civ. St. Supp. 1918, art. 5639a, c. 2a, tit. 86, provides for lien in favor of contracting laborer and materialmen as follows:

"Any person, corporation, firm, association, partnership, materialman, artisan, laborer or mechanic, who shall, under contract, express or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land, or the owner of any gas pipe line or oil pipe line, or owner of any oil or gas pipe line right of way, or with the trustee, agent or receiver of any such owner, perform labor or furnish material, machinery or supplies, used in the digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry, or oil or gas pipe line, shall have a lien on the whole of such land or leasehold interest therein, or oil pipe line or gas pipe line, including the right of way for same, or lease for oil and gas purposes, the buildings and appurtenances, and upon the materials and supplies so furnished, and upon said oil well, gas well, water well, oil or gas pipe line, mine or quarry for which same are furnished, and upon all of the other oil wells, gas wells, buildings and appurtenances, including pipe line, leasehold interest and land

used in operating for oil, gas, and other minerals upon such leasehold or land or pipe line and the right of way therefor, for which said material and supplies were furnished or labor performed. Provided, that if labor supplies, machinery, or material is furnished to a leaseholder the lien hereby created shall not attach to the underlying fee title to the land. (Act Feb. 13, 1917, c. 17, § 1.)"

Article 5639b gives a subcontractor a like lien.

Article 5639d provides for the lien to be fixed and secured and notice thereof given—

"* * * in the same manner as provided for in chapter 2, title 86, entitled 'Liens,' of the Revised Civil Statutes of 1911 of the State of Texas, relating to liens for mechanics, contractors, builders and materialmen as the same now exists or may hereafter be amended. * * *"

Vernon's Sayles' Ann. Civ. St. 1914, art. 5632, c. 2, tit. 86, providing for notice to the owner, is as follows:

"Every person, except the original contractor or builder, or those claiming under article 5523 (5623) who may wish to avail himself of the benefits of this law, shall give at least ten days' notice in writing before the filing of the lien, as herein required, to the owner or owners, or agent, or either of them, that he holds a claim against such house, building or improvement, setting forth the amount, and from whom the same is due; and thereafter said owner, or owners, or agent, shall be authorized to retain in his hands the amount claimed until the same is settled or determined not to be owing." Acts 1889, p. 110, § 12.

The lien herein asserted is filed against the property of Thomas, Ludlow, and Devenish, the defendants, and the account and supporting affidavit, as stated, nowhere give notice to the owner, the intervener, Haley, of their claim against his property, and plaintiffs do not allege in their petition that they ever gave him any written notice of their claim, and the plaintiffs do not allege in their petition anything to excuse them from performing this statutory duty. Haley, in his petition for intervention, alleges the payment in full to the original contractor of all sums due under the contract, and there is no issue before the Supreme Court, presented by the plaintiffs, bringing in question the time of such payment by Haley.

As we view the requirements of the above statutes, no lien can be fixed against property unless written notice of such claim of lien has been presented to or in some way served upon the owner before he has paid to the contractor the money due him upon the original contract. The filing and recording of the claim is not sufficient to make the owner responsible. He must have had written notice thereof at such reasonable time as will enable him to withhold from the contractor such sums as may have been necessary to pay the laborers' account. If the notice is served on the owner at a time when he has, under the terms of his contract, paid the original contractor all that is owing to him, the owner would not then be made liable for such laborers' account because of such failure to give him notice in time, and this would undoubtedly be true if such owner had never had such notice and had settled in full with the original contractor.

In Johnson v. Amarillo Improvement Co., 88 Tex. 512, 31 S. W. 503, Chief Justice Gaines, speaking for the Supreme Court, says:

"The object of the act in requiring notice to be given to the owner of each 'item as it is furnished' was to advise him as to the lien, and thereby to enable him to save himself from loss, by withholding from any amount which might be due to the contractors a sufficient sum to discharge it; and it may be that, should a materialman fail to give immediate notice of any material furnished, and should the owner pay out all that is due to the contractor under the contract, the lien would be lost. But where there has been delay in giving the notice, and the owner has not been prejudiced thereby, we see no reason why the lien should be discharged."

In the case of Padgitt v. Construction Co., 92 Tex. 629, 56 S. W. 1012, the Supreme Court holds under the provisions of the foregoing article (article 5632):

"One who furnishes material to a subcontractor to be used in the construction of a house may, by complying with the provisions of that article, fix a lien upon the property and secure the payment of the price of the material so furnished without regard to the original contractor. The law does not provide that the materialman shall take any notice of the rights of the original contractor, but requires that he shall give to the owner of the property notice of the material furnished to enable him who furnished it to subject the property to his claim. Article 3308 of the Revised Statutes authorizes the owner of property improved, upon which a lien has been fixed under the statute, to withhold from the contractor so much of the price for the construction of the building as may be necessary to satisfy the lien. If material has been furnished to a subcontractor and the law has been complied with so that a lien is fixed upon the property, and the owner owes to the original contractor a sufficient amount of the contract price to settle the claim, the property may be subjected to its payment, although the contractor may have paid to the subcontractor more than the latter was entitled to receive."

In the case of Wilson v. Sherwin-Williams Paint Co., 110 Tex. 156, 217 S. W. 372, Justice Greenwood, determining the legal effect of notice to an owner under article 5623, V. S. of a claim for material furnished a subcontractor, given when the owner was indebted to the contractor in an amount in excess of the claim, and followed by the filing and recording of proper account, within the time required by the statute, recognizes the rule to

be that, if such notice is given while the owner is yet in debt to the contractor, such notice is effectual in impounding such sum in the hands of the owner as remains unpaid on the contract, and, in discussing the provisions of the statute requiring notice, he says:

"The statutes embody the just conception that the rights of the contractor are inferior to those of the materialman. The duty to furnish and pay for the material is primarily imposed on the contractor by the ordinary building contract, such as that here involved. The contractor selects the subcontractor. If loss must fall on materialman, owner, or contractor, by reason of the default of one chosen by the contractor to perform his obligation, and of one whose acts are, or ought to be, directly under the contractor's supervision, surely the loss ought to fall on the contractor. Such is the just operation of our statutes, as heretofore construed, and we do not think that the contractor has any just ground to complain of the relief awarded the materialman under the facts of this case. By withholding from the contractor the amount due the materialman, as authorized by the statute, the owner sustains no loss."

In the last-named case the analogy between the statutory proceeding providing for the creation of a lien and the consequent impounding of money yet in the hands of the owner and of our garnishment proceedings is recognized, and it is said:

"The statutes, when complied with, have substantially the same effect as a transfer of the obligation of the owner by the contractor to the materialman to the extent required to pay the account for the material."

No contention can be made that a garnishee who has paid over all sums of money that he may have been owing to the party to whom he was in debt prior to the service of the writ of garnishment would be liable because of such garnishment.

We therefore recommend to the Supreme Court that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.