PACIFIC INDEMNITY CO., Appellant,

v.

BOWLES & EDENS SUPPLY CO., Limited,
et al., Appellees.

No. 15058.

Court of Civil Appeals of Texas.
Dallas.

March 30, 1956.

Rehearing Denied April 27, 1956.

Allen Wight and Touchstone & Bernays, Dallas, for appellants.

A. George Biggs, Alto B. Cervin, Sanders, Nolen, Dees & Stevenson, and Saner, Jack, Sallinger & Nichols, Dallas, for appellees.

YOUNG, Justice.

This suit was under Articles 5160–5164, V.A.C.S., against the surety Company on a performance bond given in connection with construction of a public swimming pool, for unpaid claims by way of labor performed and material furnished; brought by Bowles & Edens Supply Company, with Childers Concrete Company and Hawes Electric Service intervening. On trial to the court, judgment was for full amount of the respective claims (except as to Hawes Electric Service), plus attorney fees. Findings of fact and conclusions of law were filed at request of defendant; and this appeal followed the court's overruling of its motion for new trial.

The record reflects the following general facts: That on or about February 17, 1953, the City of Dallas entered into a contract with Texas Pool Corporation for the construction of a swimming pool in Martin Weiss Park, within municipal limits. Contemporaneously appellant Indemnity Company executed a performance bond whereby it became surety and bound to pay the unpaid claims of "all persons, firms and corporations, who may furnish material for * * * the buildings, structures, or improvements referred to in the 'contract between the Texas Pool Corporation and the City of Dallas.'" The project was placed in operation on or about July 24, 1953; the Pool Corporation, however, not being able to pay all its debts inclusive of those owing to appellees, was thereafter adjudged a bankrupt with this suit resulting under Art. 5160 for recovery on the contractor's bond. Plaintiff and interveners are individuals doing business under trade names and will be referred to herein as Bowles & Edens, Hawes Electric Service, and Childers Concrete Company.

Article 5160, under which appellees filed their claims, provides for the right of laborers and materialmen to intervene in a suit on a performance bond, required by the same statute to be furnished by the contractor on a public works project. Arts. 5161 through 5164 are kindred statutes, with no questions raised as to them; Art. 5160, only, being involved in this appeal. It recites in part: "Provided further, that all claims for labor and material furnished to said contractor, and all claims for labor and material furnished to any contractor shall be itemized and sworn to as required by Statutes as to mechanic's lien claims, and such claims shall be filed with the County Clerk of the County, in which said work is being prosecuted, within *ninety days from the date of the delivery of said material and the performance of said work.*" (Emphasis ours.) The mechanic's lien statutes referred to are 5453 through 5456; Art. 5453 providing in part that: *"Within ninety days after such indebtedness accrues,* each person, firm or corporation who furnished material to or performed labor for a contractor * * * shall give written notice to the owner * * * of each and every item furnished * * *, and shall file with the county clerk of the county in which such property is located * * * an itemized account of his or their claim * * *."* (Emphasis ours.) Arts. 5455 and 5456 set out forms to be used. Thus for what is meant by itemization of claims under Art. 5160, we must look to the mechanic's lien statutes and interpretation accorded thereto by the courts; at the same time bearing in mind the distinction between Art. 5160 and Art. 5453 as to beginning of the ninety-day period of limitation. Under the former, it is the date of delivery of material and the performance of said work that is controlling; under the latter statute the period begins upon accrual of the debt.

Points of appeal may be summarized, viz.: The trial court's error (1) in rendering judgment for appellees, furnishers of labor and (or) material on a public job

against defendant surety on the contractor's bond, in that the claims as filed with the County Clerk were not properly itemized as required by Art. 5160, Texas Revised Statutes; (2) "in holding that the claims of appellees as filed were sufficient to disclose to interested parties how much, if any, of the material furnished or labor done was done or furnished within ninety days prior to the filing of the claim"; (3) in rendering judgment for Bowles & Edens and Childers Concrete Company, "in that the evidence showed clearly and conclusively that the major portion of the material furnished was furnished more than ninety days prior to the filing of the claim"; (4) in rendering judgment for Bowles & Edens, the evidence failing completely "to show that merchandise of the value of the judgment was delivered to the contractor in question within ninety days prior to the filing of the claim"; (5) in rendering any judgment in favor of Hawes Electric Service, "in that the evidence is wholly insufficient to show that any of the labor and material was furnished within ninety days prior to the filing of the claim and before July 22, 1953"; (6) in rendering judgment in favor of appellees for attorneys' fees. Appellees answer by counter-points, in effect, that their verified claims are in sufficient compliance with the statutes.

Facts relevant to these claims are as follows: (Bowles & Edens) On March 18, 1953, Texas Pool Corporation issued to them its purchase order for material consisting of several pumps, motors, and component parts, invoiced and arriving at job site on or about May 27, 1953. Two of the electric motors, valued at $607.42, were found not according to specifications, and turned back to the factory; balance of material permittedly left on the site, crated, until arrival of replacements on July 3, when all material was assembled and installed by July 20. About August 31, 1953, the Pool Corporation paid to Bowles & Edens $1,000 on accoount, leaving a balance of $1,242.50 which it was never able to pay. The affidavit of Bowles & Edens was filed for record on September 14, 1953, with the material listed as in purchase order; the only reference to date of delivery, however, appearing as follows: "Delivery and performance by us on 7-20-53." Compliance with statute required delivery of material on and after June 16, 1953, which date was within ninety days preceding September 14, 1953.

On or about June 1, 1953, Texas Pool Corporation issued its purchase order to Childers Concrete Company for pouring of concrete walks at Weiss Park pool, payment at $0.45 per square foot; entire job (labor and material) amounting to $3,111.78; they receiving on account by August 25 the sum of $2,800.60, leaving an unpaid balance of $311.18. On October 8, 1953, the Concrete Company filed its affidavit of claim, not setting out date or dates upon which labor was performed or material furnished; the claim reciting in such respect, "and the same remaining unpaid, became due and payable on July 13, 1953." With their affidavit filed on October 8, 1953, the ninety days preceding that date within which to perform labor and furnish material was on and after July 10, 1953.

Under date of April 22, 1953, the Pool Corporation issued its purchase order to Hawes Electric Service for material and labor in total amount of $2,669.06 for use in performance of the contract to build the pool. Attached to the affidavit of Mr. Duval for the Service Company, filed October 15, 1953, were eight listed groups of material furnished and labor performed as to each (a copy of the original estimate). No payments were made on this account by Texas Pool Corporation, with $2,669.06 as the total amount due on their claim as filed; and relative to dates of the various items, only the following statement is made at end of the list: "That all of the above labor and materials were furnished and delivered to the Texas Pool Corporation from on or about May 20, 1953, to on or about July 22, 1953." Bearing in mind aforesaid October 15th filing of the Hawes affidavit, the ninety-day period preceding that date within which to furnish the ma-

terial and perform labor was July 17, 1953 and thereafter.

■ Materialmen and laborers seeking to recover under the provisions of Art. 5160 must establish by sworn itemized account that the material was furnished and labor performed within the statutory period; and without the required showing they are not entitled to its benefits. Metropolitan Casualty Ins. Co. of New York v. Texas Sand & Gravel Co., Tex.Civ.App. 68 S.W.2d 551. The lien is a creature of the statute and persons entitled to the security afforded must comply strictly with its provisions. McClellan v. Haley, Tex. Com.App., 250 S.W. 413; Union Indemnity Co. v. Rockwell, Tex.Com.App., 57 S.W.2d 90. In this connection, the statutes, relevant to itemization, in terms of Art. 5160 (that the claim must be filed within 90 days from date of delivery of material and performance of work), have long since received consistent interpretation by Texas Courts. Attention is directed to several of these holdings.

■ In Ball v. Davis, 118 Tex. 534, 18 S.W.2d 1063, 1064, a leading case, the Supreme Court had this to say: "The sufficiency of the itemization must be determined, in view of the objects and purposes of the statute. The evident purpose of the statute here involved is to provide the owner of the property with such particulars as will enable him to ascertain whether or not the account is correct, and show the facts necessary to the establishment of a lien, not only for the benefit of the owner, but of third parties as well, who may be or might become interested or affected thereby. *To accomplish these purposes the account must show the facts required by the statute to establish the lien. Unless the affidavit and account are sufficiently definite to show that labor has been performed, that a sum certain is due therefor, and the date when due, it is insufficient to accomplish the purpose of the statute to show and fix a lien.*" (Emphasis ours.) The opinion then follows with a statement from 18 Ruling Case Law, p. 926, viz.: " 'Mechanics' liens being purely statutory,

there is no intendment in their favor, and they must show upon their face all the statutory requisites to their validity. They are incipient or inchoate until completed or perfected by compliance with the statute, and are lost utterly if those acts required for their completion be not done in the manner and within the time required by statute. In many cases it is said that a strict compliance with the statute must be shown, but this doubtless means that all the statutory steps must be taken, and that the notice or statement of the lien shall contain all the averments required by the statute.' "

■ Further applicable and with especial reference to provisions of Art. 5160, it is held in Trinity Universal Ins. Co. v. Woitaske, Tex.Civ.App., 148 S.W.2d 235, 236, that: "Applying to the facts of this case the rule laid down by the cases cited above, we are of the opinion that the claim of Woitaske was not sufficiently itemized to meet the requirements of Article 5160. It was not itemized either as to the dates on which the material was delivered, or on which the labor was performed; nor was it itemized as to the various items or quantities of material actually delivered." Above requirements of itemization are the same today; see Houston Fire & Cas. Ins. Co. v. Col-Tex Refining Co., Tex.Civ.App., 231 S.W.2d 468, 470, where the Court, in holding the account properly itemized, stated: "All that is required of the itemization is that it show with reasonable certainty the character and amount of materials furnished, dates when, and places where furnished and the value of same."

■ Manifestly, the sworn claims of appellees are lacking in one or more of the particulars discussed in the foregoing cases, not showing upon their face "the facts required by the statute to establish the lien." Ball v. Davis, supra. For while, in each instance, the listing of material furnished is seen to be adequate, no itemized dates of delivery are seen, nor detail of labor done in amounts and dates of performance. Further discussion will be made of these claims separately.

### Bowles & Edens

■ Their first invoice of listed material sold is in amount of $1,973, the second of $269.50, a total of $2,242.50; with balance due in affidavit of $1,275.25. Under the testimony and stipulations, all material arrived at the job site on May 27, 1953, and except for the two motors, remained there until installed—a time well beyond the 90 day period of limitation. "The plain language of the statute with reference to materials is that the claim must be filed within 30 days (now 90) 'from the date of the delivery of said materials.' This must be held to be *the actual physical delivery of the various items or consignments* of material and not a technical legal delivery based on the provisions of the contract." (Emphasis ours.) Aetna Casualty & Surety Co. v. Hawn Lumber Co., 128 Tex. 296, 97 S.W.2d 460, 463.

■■ But appellants contend that their material was designed for a specific job; that, under the testimony, the contractor simply permitted the crated parts to lie on the ground until rectification and return of motors, with no actual delivery of any items thereof until accepted and job completed on or about July 20. They say that "actual delivery" must be interpreted according to the law of sales; and that property "is delivered, consummating sale, whenever the seller has done everything necessary to be done to put property completely and unconditionally at the disposal of the buyer," citing Shearman v. Poe, Tex.Civ.App., 9 S.W.2d 762; Fox v. Young, Tex.Civ.App., 91 S.W.2d 857; 37 T.J. 361. They contend further that on basis of May 27 as date of delivery, they would then be in the "astounding position" of attempting to establish a lien when no debt existed. This Court sustained a like contention (made by Dallas Plumbing Company) in the Aetna-Hawn case, supra, but was reversed [1].

We conclude appellees' theory of delivery according to the law of sales to be inapplicable. Under the construction already given to Art. 5160 by the courts, true date of delivery of this material must be regarded as controlling, even though use of a part thereof be conditioned upon later arrival of proper motors; in short, a delivery by installments. The following conclusion in National Surety Co. v. United Brick & Tile Co., Tex.Civ.App., 71 S.W.2d 937, 941, was approved by our Supreme Court in Aetna Casualty & Surety Co. v. Hawn Lumber Co., viz.: "We believe the requirement of article 5160 that verified itemized statement of materials furnished should be filed within ninety days after such materials have been delivered, even though such materials necessary to complete the work are to be delivered in installments, is mandatory and conclusive."

### Childers Concrete Company

■ In first counter-point intervener attacks appellant's answer as insufficient, constituting neither a general nor special denial of liability. To the contrary such defensive pleading clearly appears to put in issue appellee's compliance with the statute [2].

■ The Childers Concrete affidavit and Exhibit 1 attached, show no dates on which labor was performed or material furnished, merely closing with "The amount remaining unpaid became due and payable to affiant on July 13, 1953." The ninety-day

---

1. See Aetna Casualty & Surety Co. v. Hawn Lumber Co., Tex.Civ.App., 62 S.W.2d 329, 332, 334, where, discussing Article 5160, we held (mistakenly, it appears) that: "It is not believed that the Legislature intended to require the doing of the useless work of filing of a verified statement for a claim that had not accrued, and the necessity for filing same might never exist."

2. A paragraph of defendant's pleading so criticized reads: "For further answer herein, if need be, this defendant says that neither plaintiff nor such interveners, within the time required by the law, and particularly Art. 5160 of the Civil Statutes of this State, filed an itemized and sworn statement of their claim with the County Clerk of Dallas County."

period of limitation began on July 10. Under the testimony, this concern poured the concrete contracted for between June 29 and July 8, 1953, engaging only in corrective work on July 9 and 10. The chart of labor performed (placed in evidence by intervener) runs from day to day, not detailing amount of labor done on the last day (July 10) which, at least, was lienable. It is intervener's theory that in this, an indivisible and lump sum contract, the ninety-day period began on completion of the job—obviously conformable to the statutes on mechanic's liens, but a wholly insufficient compliance with Art. 5160, as the courts have uniformly held. Needless to say, intervener's single authority of Republic Nat. Bank & Trust Co. v. Massachusetts Bonding. & Ins. Co., 5 Cir., 68 F.2d 445 (an earlier case), is in conflict with Aetna Casualty & Surety Co. v. Hawn Lumber Co., supra; and under the law of this later case intervener's entire claim must fall.

### Hawes Electric Service

 Intervener's purchase order was for $2,669.06; the trial court finding that between the dates of July 18 and August 8, 1953, material and labor in the amount of $1,797.59 were supplied. The only reference to dates in the claim filed is in the statement "that all of the labor and materials were furnished and delivered to Texas Pool Corporation from on or about May 20, 1953 to July 22, 1953." The 90 day period of Art. 5160 would apply to all items supplied prior to July 17, 1953. Therefore if any part of this claim is secured, it must be for labor done and material furnished during the six-day period of July 17 through July 22, 1953; and items amounting to $1,797.59 were thus sought to be proven by the witnesses Duval and Williby. Their testimony as to hours and value of labor for this interval was only estimated, with a segregation of material furnished between such dates of approximately $1,036. But as observed by appellant, "it is not possible to cure an insufficient verified account on file by showing the itemization and dates of delivery by

evidence adduced at a trial of the cause. All of the authorities already cited speak of the sufficiency of the filed verified accounts, and not of the sufficiency of evidence. If this were not true, it would be pointless to require anything in the affidavit." It is argued that no one interested could possibly have been misled by the affidavit in content; it detailing truthfully all items for which a lien is claimed. However, such is not the test. "'Mechanics' liens being purely statutory, there is no intendment in their favor, and they must show upon their face all the statutory requisites to their validity. They * * * are lost utterly if those acts required for their completion be not done in the manner and within the time required by statute.'" Ball v. Davis, supra. Bowles & Edens could have fixed a valid lien as regards the two motors delivered on July 3, had the account named these items, their value and date of delivery. So also of Childers Concrete, had the value of material furnished and labor performed between July 17 and 22, 1953, truly appeared in the claim as filed. This procedure was not followed, however, the parties choosing to list their entire amount of material and labor as furnished and performed on July 20 and July 13 respectively; a showing quite satisfactory under Art. 5453 on mechanics' liens, but amounting to an insufficient itemization under Art. 5160 as held in the cited cases.

From the record, these are honest accounts, with all items furnished to the contractor by appellees in good faith and at fair value. The statute has absolutely assured them of payment in full for their goods and services; in turn, only requiring a strict compliance with its provisions in the fixing of an involuntary lien.

Above conclusions render unnecessary any ruling on the trial court's allowance of attorneys' fees under Art. 2226, V.A.C.S.; that is, whether same are proper items of recovery in a cause of action based on Art. 5160.

Judgment of the trial court as to each appellee is reversed and judgment here rendered in favor of appellant Indemnity Company.

## On Rehearing.

Above rendition is without prejudice to the right of claimants herein of recourse upon the City of Dallas for any funds of the defunct Texas Pool Corporation actually retained by the city pursuant to Article 5472a, V.A.C.S. Otherwise, motions of appellees for rehearing are overruled.